UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DERRICK GRAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 09 C 2064 |
| | ) | |
| ARCHIE STALLWORTH, Star No. 351; | ) | |
| and DETECTIVE SNEED, Star No. 925, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge.

This case comes before the court on the motion of Defendants Officer Archie Stallworth and Detective Sneed for summary judgment on all claims asserted by Plaintiff Derrick Gray. For the reasons stated below, the motion is denied.

## BACKGROUND[1]

Plaintiff Derrick Gray ("Gray") was arrested by Defendants Officer Archie Stallworth ("Stallworth") and Detective Sneed ("Sneed"), on June 17, 2007 and again on July 12, 2007. The parties dispute most of the events surrounding those arrests. Accordingly, our description of the relevant facts that are supported by admissible

---

[1] The Defendants moved to strike certain additional statements of fact submitted by Gray. We did not rely on the additional statements of fact pertaining to the witnesses' credibility in deciding the motion for summary judgment; the motion is therefore denied as moot.

evidence in the record will note the existence of disputes and present each side's account of the events at issue.

Gray lived with his extended family in Harvey, Illinois. Gray and his family, lead by their grandmother, Angeline Gray, operated a candy store out of their home. Officer Stallworth and Detective Sneed were, at the time of the events, both employed by the Harvey Police Department ("HPD").

The parties present competing narratives regarding Gray's first arrest. According to the Defendants, on June 16, 2007, in response to numerous citizens complaints about narcotic dealings, Sneed and Stallworth initiated an investigation of the area near Gray's residence utilizing a digital video recording device. On June 17, 2007, Sneed was conducting video surveillance of Gray's home from an unmarked van parked nearby. Gray and his family were having a barbecue in their yard. Some time in the early afternoon, Sneed observed a vehicle stop at Gray's home. Gray approached the vehicle and a short conversation took place between the driver, Daraun Moore ("Moore"), a passenger of the car, and Gray. Sneed then noticed a hand-to-hand exchange between Gray and one of the passengers. Sneed radioed Stallworth who was waiting in a marked squad car two or three blocks down and notified him of the suspected drug transaction. Moments later, Stallworth spotted Moore's vehicle and curbed it in the area of 147th street and Honore, a short distance from Gray's residence.

Stallworth conducted a search in the vehicle and eventually recovered a small amount of cannabis packaged in blue-colored bags.[2] Stallworth handcuffed all the passengers, with the exception of Moore's daughter, placed them in the squad car, and transported them to the HPD.

Once they arrived at the police station, Sneed and Stallworth testified that they performed a videotaped interrogation of Moore. During the interrogation, Moore gave a video-recorded statement confessing that the cannabis found in the car was his and that he had purchased it from Gray. Moore was eventually charged with unlawful possession of cannabis.

On June 17, 2007, Sneed and Stallworth decided to arrest Gray on the strength of their prior surveillance of Gray's house and on Moore's recorded statement. Escorted by other police officers, they returned to Gray's residence to place Gray under arrest. In the course of Gray's arrest, the Officers conducted a search and recovered from Gray's person eight small blue-tinted ziplock bags containing 6.1 grams of cannabis. The bags were identical to the ones found in Moore's car. Gray was handcuffed by police officers and taken to the HPD.

---

[2] The record before the court does not clearly indicate whether Moore immediately confessed to the possession of cannabis and handed the drugs to Stallworth or whether the drugs were recovered during Stallworth's search of the vehicle.

While Gray was transported to the HPD, Sneed and Stallworth obtained from Angeline Gray, Gray's grandmother and leaseholder of the family house, a written and verbal consent to search Gray's residence. The consent to search form was witnessed by Jeanette Gray, Angeline's daughter. Sneed and Stallworth conducted a search in the basement of the house which lead to the recovery of a bong (pipe used to smoke cannabis), a plastic package with a green leafy substance, various packaging materials, an electronic scale, and Gray's Illinois identification card. All items were inventoried and placed into evidence at the HPD. Gray was finally charged with drug-related crimes for his June 17, 2007 arrest. The criminal charges against him were later dismissed prior to any trial; Gray was released from custody.

Gray challenges the Defendants' account of the events surrounding the June 17, 2007 arrest. Gray categorically denies that the police found drugs in his possession or in the searched premises of his house; the only items discovered were his identification card and a broken bong. His sister-in-law, Francia Cody, who lives in the same house, testified that Gray never possessed or sold drugs out of the family house.

In addition, Gray denied that Moore visited his house on the day in question and claims he is not acquainted with him. Gray also maintains that Sneed and Stallworth maneuvered Moore into a confession. In his deposition, Moore stated that he felt compelled to confess to cannabis possession because the Defendants told him that his

daughter could be sent to the Department of Children and Family Services if he did not. Moore further testified that during the video-recorded interrogation Sneed had "walked [him] through" all the answers by telling him what to say. Moore now asserts that he never purchased or received drugs from Gray and the first time he ever saw the drugs was when Stallworth retrieved them from the car.

Finally, Gray claims that Sneed and Stallworth coerced his grandmother into signing the consent form. According to the deposition of Jeanette Gray, Angeline Gray was left with no other choice but to sign the form because the officers were threatening to come in anyway and that the Gray family would have to move out of Harvey if she did not sign the form.

The parties also dispute the circumstances leading to Gray's second arrest. The Defendants testified that on July 12, 2007, they conducted another investigation on Gray's home, this time utilizing a confidential informant. The confidential informant was first searched to ensure that he did not carry any narcotics or currency on him. The Officers then provided the informant with two prerecorded, photocopied, five-dollar bills. The photocopies were time-stamped and later placed as evidence in the HPD. Sneed and the confidential informant traveled in an undercover vehicle to an area near Gray's home. Sneed parked the vehicle far from the target residence but close enough to maintain visual contact with the confidential informant. The informant exited the

vehicle and walked to Gray's residence where he was approached by Gray. Sneed discerned that Gray and the informant engage in a hand-to-hand transaction. The informant returned to the unmarked vehicle without Sneed ever losing sight of him and handed Sneed two ziplock plastic bags of a green leafy substance.[3] Before leaving the scene, Sneed testified he saw Adoko Neil ("Adoko"), Gray's neighbor, enter his car, drive by Gray's house and conduct a hand-to-hand transaction with Gray. Gray kneeled to place something in his sock while Adoko drove away.

Moments later, relying on the controlled purchase executed by the informant, the recovery of a narcotic substance, and Gray's interaction with Adoko, Sneed and Stallworth drove back to Gray's home to place him under arrest. Both officers maintain that Gray was seized while standing outside of his house and at no time did they set foot in his house. Gray was transported to the HPD where a custodial search recovered the two prerecorded five-dollar bills and roughly a dozen ziplock bags containing a green leafy substance that later tested positive as cannabis.[4] On July 13, 2007, Gray was charged with delivery of cannabis on school grounds.

---

[3] The record before the court does not clearly indicate that the green leafy substance tested positive for cannabis.

[4] The record before the court does not clearly indicate whether the Officers recovered thirteen or fifteen plastic bags.

Gray categorically denies Defendants' version of events. Gray claims that he never sold or bought drugs to or from anyone on July 12, 2007, or at any other time. In his deposition, Adoko also denies selling drugs to Gray or having any contact or any hand-to-hand transaction with him on that day.

In addition, Gray asserts that he was arrested within the premises of his residence. In his deposition, he stated that as Sneed approached to place him under arrest, he stepped back into his house and closed the screen door. Sneed slammed the door open, snatched him out of the door, handcuffed him, and placed him under arrest. The Officers allegedly did not inform him of the charges against him and no interrogation ensued. Gray was placed in custody and was informed of the charges five or six hours after his arrest.

On August 1, 2007, Sneed was called to testify in relation to the arrests during a preliminary hearing held in a Circuit Court of Cook County. His testimony regarding the June 17, 2007 arrest was postponed to a later date because the State's Attorney had not yet received the Illinois State Police laboratory results. Sneed testified to the existence of a confidential informant and to his execution of the controlled buy that lead to Gray's arrest on July 12, 2007. The court found there was probable cause for Gray's arrest on July 12, 2007.

Another hearing was held on August 15, 2007. Gray's counsel accused the Cook County State's Attorney and the Defendants of failing to turn over critical evidence pertaining to Gray's arrests in June and July 2007. Specifically, Gray's counsel never received any information from Sneed or Stallworth regarding the confidential informant's identity, history, and involvement in Gray's arrest. As a result, Gray's counsel filed a motion for sanctions arguing that the State was willfully and intentionally withholding evidence from the defense. Counsel then filed a motion for production of the confidential informant and a motion to dismiss the charges. The criminal charges against Gray were eventually dismissed prior to trial for both the June 17 and the July 12, 2007 arrests. Gray claims that by refusing to tender the evidence the Officers extended the amount of time he was forced to remain in custody. Gray was imprisoned from July to October 2007. Defendants reject any responsibility for the State's Attorney's failure to produce any exculpatory evidence.

On April 3, 2009, Gray filed in this court a four-count amended complaint pursuant to 42 U.S.C. § 1983. In Count I, he alleges that his Fourth Amendment rights were violated when Defendants unlawfully arrested him and searched his residence on June 17, 2007. Count II alleges unlawful seizure for the July 12, 2007 arrest. Count III avers that Defendants engaged in a conspiracy to violate Gray's constitutional rights and Count IV asserts a violation of his right to a fair and impartial trial. Defendants now move for summary judgment on all of Gray's claims.

# LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when the evidence is such that a reasonable jury could find for the nonmovant. *Buscaglia v. United States*, 25 F.3d 530, 534 (7th Cir. 1994). The movant in a motion for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact by specific citation to the record; if the party succeeds in doing so, the burden shifts to the nonmovant to set forth specific facts showing that there is a genuine issue of fact for trial. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In considering motions for summary judgment, a court construes all facts and draws all inferences from the record in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). With these principles in mind, we turn to Defendants' motion.

# DISCUSSION

## I. Fourth Amendment Claims

### A. False Arrests

Defendants argue that they are entitled to summary judgment on the false arrest claims asserted in Counts I and II because they had probable cause to arrest Gray on

June 17, 2007, and July 12, 2007. Sneed and Stallworth contend that probable cause for both arrests is based on Sneed's surveillance of Gray's residence coupled with the corroborating information generated first by Moore, who confessed to the purchase of drugs from Gray on June 17, 2007, and then by the confidential informant, who, on July 12, 2007, provided Gray with prerecorded funds in exchange for cannabis.

In order to prevail on a § 1983 claim for false arrest, Gray must show that the police had no probable cause to arrest him for possession of a controlled substance. *Gonzalez v. City of Elgin*, 578 F.3d 526, 537 (7th Cir. 2009). The existence of probable cause is an absolute bar to any claim under section 1983 against police officers for wrongful arrest. *Stokes v. Board of Education of the City of Chicago*, 599 F.3d 617, 622 (7th Cir. 2010). Therefore, summary judgment is proper if the record establishes that at the moment the arrests were made, the facts and circumstances within the officers' knowledge were sufficient to warrant a prudent person believing the arrestee committed the offense of possession of a controlled substance. *Montano v. City of Chicago*, 53F.3d 558, 568 (7th Cir. 2008).

In his sworn statements, Gray asserts that he did not engage in any drug transactions on the days of his arrests and that Moore falsely implicated him in the purchase of cannabis. These statements are sufficient to create a genuine issue of material fact with respect to the probable cause inquiry. Viewing the evidence in the light most favorable to Gray, a reasonable juror could conclude that the facts and

circumstances within Sneed and Stallworth's knowledge were insufficient to warrant the arrests. We therefore decline to award summary judgment on the false arrest claims.

**B. Unreasonable Search**

Defendants also request that we grant summary judgment on the illegal search claim because no genuine issues of material fact exist regarding the validity of the consent given for the search of Gray's house on June 17, 2007. Defendants argue that their warrantless search was permissible because they received consent from the leaseholder, Angeline Gray, who had the requisite authority to freely consent to the search. Defendants, however, have misconceived the point of contention: Gray does not challenge his grandmother's authority to consent; rather, he presents evidence that she did not voluntarily consent.

"A warrantless search does not violate the Fourth Amendment if a person possessing, or reasonably believed to possess, authority over the premises voluntarily consents to the search." *United States v. Groves*, 530 F.3d 506, 509 (7th Cir. 2008). In determining the voluntariness of a consent to search, a court must not rely on "the presence or absence of a single controlling factor." *U.S. v. LaGrone*, 43 F.3d 332, 334 (7th Cir. 1994). Rather, a court must consider the totality of the circumstances. *U.S. v. Johnson,* 495 F.3d 536, 542 (2007).

In the instant case, whether or not plaintiff's grandmother voluntarily consented to the search of her house is a disputed material issue of fact. Defendants have

submitted as evidence the consent to search form signed by Angeline Gray and witnessed by her daughter, Jeanette Gray. In contrast, Gray contends that his grandmother did not voluntarily consent to the search of their house. In her sworn statement, Jeanette Gray stated that Sneed and Stallworth told Angeline Gray that she had to sign the form or "get out of Harvey." The dispute over the nature of Angeline Gray's consent is tantamount to a swearing contest between the parties that precludes the award of summary judgment on the unlawful search claim. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

**II. Due Process Claim**[5]

Defendants argue that Gray's due process claim cannot survive summary judgment because no disputed issues of fact exist as to whether Sneed and Stallworth concealed exculpatory evidence.

Defendants argue that summary judgment is inappropriate because Gray's counsel judicially admitted in her affidavit that the Defendants had communicated all discovery to the Assistant State's Attorney and that the latter was therefore solely responsible for the production thereof. "Judicial admissions" are defined as deliberate, clear, unequivocal statements by a party about a concrete fact within that party's

---

[5] Defendants' first argument is that Gray's claim to a fair and impartial trial is not recognized in the Seventh Circuit. However, in Gray's motion to file an amended complaint, we ruled that a claim of violation of plaintiff's right to a fair and impartial trial by withholding exculpatory evidence is compensable under § 1983. *See Ienco v. City of Chicago*, 286 F.3d 994, 999 (7th Cir. 2002).

knowledge. *Keller v. U.S.*, 58 F.3d 1194, 1198, n. 8 (7th Cir. 1995); see also *In re Lefkas Gen. Partners*, 153 B.R. 804 (N.D.Ill. 1993). Gray's counsel did not unequivocally state that Defendants had turned all evidence over to the Assistant State's Attorney. We therefore decline to view that statement as a binding admission.

Additionally, Defendants assert that they produced all evidence in their possession including all videotaped surveillance, Moore's identifying information, and the confidential informant's identifying information. In response, Gray's counsel denies having received crucial exculpatory videotapes, any timely useful information on Moore, or any information at all on the confidential informant. Summary judgment cannot be used to resolve swearing contests between litigants. *Payne,* at 770. The existence of material issues of fact remaining in dispute does not warrant the granting of summary judgment on the due process claim.

## CONCLUSION

Defendants' motions for summary judgment are denied.

_____
Charles P. Kocoras
United States District Judge

Dated:   October 28, 2010